PEOPLE v ZUNIGA

1. CRIMINAL LAW—INDECENT LIBERTIES—ELEMENTS OF CRIME—STAT-
   UTES.

   Two elements must be shown to sustain a conviction of taking
   indecent liberties with a child under the age of 16; (1) there
   must be an assault, and (2) the liberties taken must be of such
   nature as the common sense of society would brand as indecent
   and improper (MCLA 750.336).

2. ASSAULT AND BATTERY—ASSAULT—INDECENT LIBERTIES—GENERAL
   INTENT CRIME—PURPOSEFUL TOUCHING—DEFENSES—CONSENT—
   AGE—ELEMENTS—STATUTES.

   Assault is a general intent crime and a purposeful touching is all
   that is required; consent to be touched may negate assault
   which is one of the elements of taking indecent liberties with a
   child under the age of 16, but a 4-year-old girl is incapable of
   giving consent to the taking of indecent liberties with her
   (MCLA 750.336).

3. CRIMINAL LAW—INDECENT LIBERTIES—MINORS—REACTION OF SOCI-
   ETY.

   The fondling of an undressed 4-year-old female's private parts is
   an act which the common sense of society would regard as both
   indecent and improper.

4. CRIMINAL LAW—PLEA OF GUILTY—ADVICE OF COUNSEL—SENTENC-
   ING.

   A defendant was not induced to expect a lighter sentence if he
   would plead guilty where the record shows that his defense

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 6 Am Jur 2d, Assault and Battery § 55.
   42 Am Jur 2d, Infants §§ 1, 16, 21.
   50 Am Jur 2d, Lewdness, Indecency, and Obscenity § 18.
   Criminal offense predicated upon indecent exposure. 94 ALR2d
   1353.
[2] Assault with intent to commit unnatural act upon minor as
   affected by latter's consent. 65 ALR2d 748.
[4–6] 21 Am Jur 2d, Criminal Law §§ 485, 486, 493.

attorney had suggested to the defendant that he *might* receive a lesser sentence but did not guarantee it.

5. Criminal Law—Plea of Guilty—Advice of Counsel—Coercion by Counsel.

A defense attorney has not used coercion to induce a defendant to plead guilty where the attorney merely advised the defendant that his sentence "might be" less if a guilty plea was given; whether an attorney's statement is in itself coercion depends upon whether the statement is a prediction estimating leniency or whether it is an absolute promise.

6. Criminal Law—Plea of Guilty—Advice of Counsel—Coercion by Counsel—Promises—Guarantees.

Advice of a defense counsel to a defendant as to what might happen if defendant pled guilty and that the judge might be lenient in sentencing is not in itself coercion by counsel in an attempt to induce the defendant to plead guilty, where counsel's statements at best were estimates of probabilities, falling short of absolute promises or coercion, where the record is clear that both at the arraignment and again upon sentence, defendant clearly understood that if he pled guilty he could be sentenced up to ten years, and where prior to pleading defendant stated that no one had made any promises to him or guaranteed anything.

Appeal from Benzie, William R. Peterson, J. Submitted Division 3 October 8, 1974, at Grand Rapids. (Docket No. 17453.) Decided October 21, 1974.

Leo Zuniga was convicted, on his plea of guilty, of taking indecent liberties with a child under the age of 16. Defendant appealed. Upon remand for an evidentiary hearing to determine the voluntariness of the guilty plea, plea found voluntary. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *John D. Berlin,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson, III,* Director,

and *Howard C. Marderosian,* Special Assistant Attorney General, of counsel), for the people.

*Marshall S. Redman* and *F. Michael Schuck, III,* Assistants State Appellate Defender, for defendant.

Before: ALLEN, P. J., and J. H. GILLIS and McGREGOR, JJ.

ALLEN, P. J. Defendant was charged under MCLA 750.336; MSA 28.568, with taking indecent liberties with a four-year-old child on March 17, 1972. Approximately five months after the offense, defendant signed a written confession, the voluntariness of which was determined at a *Walker*-type hearing[1] held prior to arraignment. Upon arraignment November 1, 1972, defendant pled guilty and was sentenced to 2-1/2 to 10 years in prison. He appealed, and on March 22, 1974, the Court of Appeals granted a motion to remand for an evidentiary hearing to determine the voluntariness of the guilty plea. Following hearing on remand, the trial court found the guilty plea was made voluntarily and denied defendant's motion for a new trial. Defendant appeals; we affirm.

Defendant raises four issues of which two merit discussion.[2] It is claimed that the trial court insuf-

---

[1] *People v Walker,* 374 Mich 331; 132 NW2d 87 (On rehearing, 1965).

[2] The two issues not discussed above are: (1) failure to sufficiently inform defendant of the nature of the crime before accepting his guilty plea (the plea was taken under former rule GCR 1963, 785.3[2] for which the then standard of reversal is whether the record shows a miscarriage of justice and the record shows no miscarriage of justice), and (2) not properly informing defendant of his right against self-incrimination because the trial judge failed to inform defendant the jury could draw no adverse inference from his assertion of the privilege. Since the plea was made before the June 1, 1973 date of GCR 1963, 785.7, the warning given was sufficient to meet the then plea requirements. *People v James,* 52 Mich App 422, 427; 217 NW2d 408 (1974).

ficiently established a factual basis for the crime to which defendant pled guilty. The file does contain evidence detailing the offense charged but, for purposes of our review, it is not the type of evidence which we may consider.[3] Testimony upon arraignment does contain the following colloquy between the court and defense counsel.

"*Q.* Let me start at the beginning: Do you understand what the charge against you is?

"*A.* Yeah.

"*Q.* Can you tell me?

"*A.* Indecent liberties of a minor.

\* \* \*

"*Q.* But I have to ask you to tell me. What happened?

"*A.* You mean tell you what happened?

"*Q.* Yes. I'm required to ask you to do this. It isn't going to bother me; I've heard it before.

"*A.* Well, it's like I told the officers there. We went up to her house there and the kids were upstairs playin', and I was in the living room and that's where it happened.

"*Q.* All right, what happened?

"*A.* Well, I started to touch her and everything.

"*Q.* All right, was she dressed at the time?

"*A.* Yes.

"*Q.* And did you remove her clothing?

"*A.* No.

"*Q.* What did you remove? What happened?

"*A.* She removed her clothes herself.

"*Q.* She did. Then what happened?

---

[3] Detailed testimony of an offense appears in the preliminary examination but the Michigan Supreme Court has recently held such testimony may not be used to help establish a factual basis for the plea. *People v Schneff,* 392 Mich 15, 22–26; 219 NW2d 47 (1974). A factual basis for the crime charged also appears in defendant's confession but there is no information on the record that the court knew of this confession and, accordingly, it may not be used to establish a basis for the plea. *People v Carlisle,* 387 Mich 269; 195 NW2d 851 (1972).

"*A.* Well, I started touchin' her, playin' with her and everything.

"*Q.* With her private parts?

"*A.* Yeah, you know.

"*Q.* You know what I mean by that?

"*A.* Yeah, I think I do."

In *People v Kranz,* 39 Mich App 69, 71; 197 NW2d 276 (1972), and *People v Verburg,* 44 Mich App 320, 324; 205 NW2d 315 (1973), this Court held that two elements must be shown to sustain a conviction for taking indecent liberties. First, there must be an assault and second, the liberties taken must be of such a nature as the common sense of society would brand as indecent and improper. Assault is a general intent crime and, therefore, a purposeful touching is all that is required. Though consent may negate assault, a four-year old is incapable of giving consent. *People v Bennett,* 45 Mich App 127; 205 NW2d 831 (1973). Defense counsel construed the testimony quoted above as evidencing no more than the fact that defendant was playing with *the child* and accidentally touched her genitals. We read the record as showing that defendant was playing with the child's genitals. In our opinion a fondling of an undressed four-year-old female's most private parts is an act which the common sense of society would regard as both indecent and improper.

A second claim of error is that the trial court committed reversible error by denying defendant's motion for a new trial where the record showed that defendant's attorney informed him he *might* receive a lesser sentence by pleading guilty. The record of the evidentiary hearing on the voluntariness of defendant's guilty plea held pursuant to the Court of Appeals' order discloses that defense counsel suggested, though did not guarantee, a

more lenient sentence if defendant would plead guilty.[4] This testimony was unrebutted. Appellate counsel argues that unrebutted testimony at the evidentiary hearing clearly discloses that defense counsel induced an expectation of a lighter sentence, which inducement, under the ruling in *People v Guest,* 47 Mich App 500; 209 NW2d 601 (1973), and *People v Koryba,* 51 Mich App 365; 214 NW2d 845 (1974), is reversible error.

*Koryba, supra,* is distinguishable because defense counsel's statement amounted to a flat assurance the minimum sentence would be increased by one year. In the case before us the record at best, discloses that in counsel's opinion the sentence "might be" less if a plea were taken. *Guest, supra,* too, is distinguishable in that its narrow holding was only to remand for an evidentiary hearing and not, as here, order a new trial following the evidentiary hearing. Further, *Guest* speaks in terms of coercing a plea as distinguished from advising, short of coercion.

"Where, as here, it is alleged that counsel *coerced* a plea, the trial court should have taken testimony to ascertain the fact of the allegation. Where he does not, the cause must be remanded for that purpose." (Emphasis supplied.) 47 Mich App 500, 502–503.

But if *Guest* does go so far as to hold that mere advice of counsel is in itself coercion, then this panel does not concur with *Guest.* To so hold is in conflict with the weight of authority.

---

[4] *"Defendant:* I pled guilty at the advice of my attorney; he said if I'd plead guilty rather than goin' to trial that I'd have a chance of gettin' a lower sentence."

\* \* \*

*"Defense Attorney:* It's possible that I may have indicated to him that psychologically he might be looked upon with a little more favor if he pled guilty than if he were found guilty after he went to trial, but as I say, I don't recall exactly."

"*Advice of representations of counsel.* While bad advice or inaccurate representations by accused's own counsel as to the consequences of a plea of guilty under the particular circumstances are not sufficient to vitiate a plea of guilty as involuntary, in the absence of proof that the judge or the prosecuting attorney, or other state officer participated in the alleged misrepresentation, it is otherwise if the statements of the attorney amount to an unqualified factual representation that the state or a responsible officer thereof, such as a judge of competent authority or a district attorney, has entered into a bargain purporting to commit the state to give accused a reward, in the form of immunity or lesser punishment, in exchange for a plea of guilty, where such representation is apparently substantially corroborated by acts or statements of a responsible state officer, relied on by accused, and operating to preclude his exercise of free will." 22 CJS, Criminal Law, § 423(5), pp 1187–1188.

Whether an attorney's statement is in itself coercion depends upon whether the statement is a prediction estimating leniency or whether it is an absolute promise. The recent case of *People v Carmichael,* 17 Ill App 3d 249; 307 NE2d 770 (1974), is illustrative. Defendant had been placed on five years probation pursuant to a guilty plea to indecent liberties with a child. Later, he was charged in a separate and unrelated offense with assault to which he also pleaded guilty and was again placed on probation for one year. However, as a consequence of his second guilty plea, the first trial court found defendant had violated his probation and sentenced him to a term of 4 years to 4 years and 1 day. In a post-conviction motion, defendant alleged that his plea of guilty to a charge of assault was induced by his own attorney's representation that an agreement had been reached with the first trial court under which his probation

would not be revoked. Ruling against defendant's contention the court said:

"However, a guilty plea made in reliance upon advice of counsel estimating defendant's chances of acquittal, and expected sentencing, is a voluntary plea. The mere fact that an accused, knowing his rights and the consequences of his act, hopes and believes that he will receive a shorter sentence or milder punishment by pleading guilty than he would upon a trial and conviction by a jury, presents no ground for permitting the withdrawal of the plea after he finds that his expectation has not been realized. *(People v Grabowski* [1957], 12 Ill 2d 462, 468, 147 NE2d 49, 52; *People v Morreale* [1952], 412 Ill 528, 532, 107 NE2d 721, 724.) Thus, the question we must decide is whether there was sufficient evidence before the court, at the hearing on the motion to dismiss, to determine whether the statements of defense counsel on which defendant purportedly relied constituted a prediction estimating leniency or an absolute promise." 17 Ill App 3d 249, 251–252; 307 NE2d 770, 772.

Likewise, in *Huffman v State,* 499 SW2d 565, 568–569 (Mo App, 1973), the Court stated the rule as follows:

"More appropriate to the present case is the statement in *Brown v State,* 485 SW2d 424 (Mo, 1972) where it was said, l.c.430:
" ' * * * The failure of the trial court to follow the recommendations of the prosecuting attorney in this case does not indicate a "manifest injustice".'
"and in the case of *Mick v State,* 487 SW2d 452 (Mo, 1972), where it was said, l.c.454:
" ' * * * A disappointed hope of a lesser sentence than that actually received does not render a plea of guilty involuntary when the hope was not based upon positive representations upon which the defendant was entitled to rely.'
"In the instant case there were no 'positive representations' but only strongly expressed opinions by counsel

and the prosecutor, always offered with the *caveat* that the trial court did not have to adopt the prosecutor's recommendation."

A careful reading of the record leads us to conclude that in the present case, counsel's statements at best were estimates of probabilities, falling short of absolute promises or coercion. Further, the record is clear that both at the arraignment and again upon sentence, defendant clearly understood that if he pled guilty he could be sentenced up to ten years. Prior to pleading he also stated no one had made any promises to him or guaranteed anything.

Affirmed.

All concurred.